IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: NADER MODANLO         :

NADER MODANLO             :

     Appellant           :

     v.                  : Civil Action No. DKC 2006-0268

                             :

MICHAEL AHAN              :

     Appellee            :

                             :

**MEMORANDUM OPINION**

This case is before the court on appeal from the Order of United States Bankruptcy Judge Nancy V. Alquist appointing a trustee upon the motion of a creditor, Michael Ahan, in the Chapter 11 case filed by Nader Modanlo ("Debtor"), Case no. 05-26549-NVA. (Paper 6). Ahan also has filed a motion to supplement the record on appeal. (Paper 11). Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed.R.Bankr.P. 8012. For the reasons that follow, the court will affirm the bankruptcy court's Order.

**I. Background**

The following facts are undisputed, unless noted. Debtor has been involved in ongoing litigation over the management of two companies, Final Analysis, Inc. ("FAI"), and Final Analysis

Communications Services, Inc. ("FACS"), which he founded with Ahan in the early 1990s. FAI is an engineering company. FACS was established to develop and operate a worldwide satellite telecommunications system. When FACS was formed, FAI owned 100% of FACS's voting shares.

Sometime in the late 1990s, disputes arose between Debtor and Ahan over the management and direction of the companies. In 2001, FAI filed an involuntary petition under Chapter 11 of the Bankruptcy Code. As part of FAI's bankruptcy, the bankruptcy court ordered FAI to sell its assets, which included a majority of the outstanding stock in FACS. A company solely owned by Debtor, New York Satellite, LLC ("NYS"), was the successful bidder for the stock.[1]

Also in 2001, fourteen shareholders of FACS filed direct and derivative claims against FACS, FAI, and Debtor in the Circuit Court for Montgomery County, alleging misappropriation, fraud, and breach of fiduciary duty on the part of Debtor and FAI.[2] On October 22, 2004, a jury found that Debtor had breached a fiduciary duty owed to Ahan, and awarded Ahan $103.93 million. On July 14, 2005, Circuit Court Judge Michael D. Mason held a hearing during

--------

[1] In the papers, NYS is also referred to as New York Satellite Industries, LLC.

[2] Ahan was a party to the Montgomery County litigation. He is identified as a "third-party defendant/counterclaim-plaintiff." (Paper 1, ex. 16).

which he ordered Debtor to file a $1 million bond while Debtor appealed the $103.93 million judgment, but stayed his order for ten days.  On July 22, 2005, Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

On August 8, 2005, Debtor filed schedules and his statement of financial affairs with the bankruptcy court.  The personal property identified therein included Debtor's interest in NYS and FACS.  In the schedules, Debtor listed the value of his interest in NYS at "0.00."  NYS has three assets: It owns a majority of the voting stock in FACS; it owns account receivables from FACS; and it owns two contracts with Polyot, the Russian space agency, for launch services, which Debtor claims are for the benefit of FACS.  FACS, in turn, has two significant assets: rights to contract with Polyot, which Debtor has valued at $56 million; and a verdict obtained in the United States District Court for the District of Maryland against General Dynamics on September 6, 2005, Case no. PJM 03-307.  The jury in the General Dynamics litigation originally awarded FACS $129 million.  The award was reduced to $11.87 million after Judge Peter J. Messitte granted in part a judgment as a matter of law.[3]  FACS has filed an appeal.

On August 29, 2005, Debtor's first meeting of creditors took place and was continued on September 12, 2005.  During both

---

[3] The final judgment in the General Dynamics litigation was entered April 17, 2006, after Judge Alquist entered her ruling on the motion to appoint a trustee.

meetings, Debtor was asked questions about a loan made to NYS by a third party, including whether the loan was secured. Debtor asserted that he could not answer the questions due to confidentiality provisions in the loan documents. A third meeting with the creditors was not held.

On November 23, 2005, Ahan filed a motion to appoint a trustee or, in the alternative, to convert the case to Chapter 7 of the Bankruptcy Code. Judge Alquist held hearings over two days, December 20 and 21, 2005. Most of the hearing was devoted to the testimony of Debtor, one of two witnesses called. Debtor identified NYS's lenders as his brother and Prospect Telecom, AG.[4] He said NYS borrowed approximately $1.8 million from his brother and $10 million from Prospect Telecom.[5] NYS used its stock in FACS as collateral for the Prospect Telecom loan. Debtor further stated that the Prospect Telecom loan has been in default since 2004, NYS was given twelve months to cure the default, and the extension expired in January 2005.

On the first day of testimony, Ahan and the United States Trustee learned, apparently for the first time, that after Debtor filed for bankruptcy, Prospect Telecom began to take steps to perfect and secure the loan. Debtor testified that in August,

---

[4] Prospect Telecom is a Swiss holding company.

[5] Debtor also asserts that Ahan was given information relating to NYS's loans in post-judgment discovery in the Montgomery County litigation.

4

September, and October 2005, he received several calls from attorneys representing Prospect Telecom about the loan being in default and that Prospect Telecom wished to take possession of the FACS stock certificates, which Prospect Telecom should have done when the loan was signed.  In October 2005, Prospect Telecom filed a replevin action in the Circuit Court for Montgomery County seeking to obtain the stock certificates.  Debtor testified that he made a business decision not to fight the replevin action because NYS was in default and it could not cure the default.  He stated that he made the decision without hiring an attorney, and after consulting on one occasion with his bankruptcy attorney, Joel Aronson.  He explained that he didn't hire a lawyer because "I didn't have the money."  (Paper 1, ex. 11, at 45).  On November 7, 2005, the Montgomery County Circuit Court ordered Debtor to turn over the FACS stock certificates owned by NYS, which he did on November 9, 2005.[6]

On December 22, 2005, the bankruptcy court granted Ahan's motion to appoint a trustee.  The Order was entered December 23, 2005.  Debtor filed a timely appeal.  On February 24, 2006,

---

[6] Prospect Telecom was unsecured until it filed its financing statement on September 8, 2005.  Debtor contends that because NYS was in default and could not cure, NYS could have filed a bankruptcy petition, and if it had done so within 90 days following Prospect Telecom's UCC filing on September 8, 2005, NYS might have been able to avoid the security interest as a preferential transfer pursuant to 11 U.S.C. § 547(b).  (Paper 12, at 16).

Bankruptcy Judge Alquist denied Debtor's motion to stay the appointment of the trustee pending appeal.[7]

## II.  Standard of Review

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.[8]  *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992); *Travelers Ins. Co. v. Bryson Prop., XVIII (In re Bryson Prop., XVIII)*, 961 F.2d 496, 499 (4th Cir.), *cert. denied sub nom., Bryson Prop., XVIII v. Travelers*

---

[7] Ahan filed a motion to supplement the record on appeal with this ruling, which Debtor opposes, contending that considering the ruling without the parties' papers is misleading.  With or without a motion to supplement, this court is entitled to take judicial notice of the records of the bankruptcy court: "Moreover, the Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 (4th Cir. 1990).  Certainly, the stay denial is relevant to the issue before this court on appeal, and Ahan's motion will be granted.

[8] Ahan raises the question of whether the bankruptcy court's order is final for purposes of appellate review.  The United States Court of Appeals for the Fourth Circuit has held that an order denying appointment of a Chapter 11 trustee is a final decision appealable under 28 U.S.C. § 1291.  *See Comm. of Dalkon Shield Claimants v. A.H. Robins Co*, 828 F.2d 239, 241 (4th Cir. 1987).  In so ruling, the court cited with approval *In re Paolino*, 60 B.R. 828 (Bankr.E.D.Pa. 1986), in which the court treated the appointment of a trustee as final for purposes of review.  *Dalkon Shield*, 828 F.2d at 241.  In an unpublished decision, *Harford v. Potomac Valley Farm Credit, ACA*, 911 F.2d 722, 1990 WL 116729, at **1 (4th Cir. 1990), the Fourth Circuit relied on *Dalkon Shield* to state expressly that a bankruptcy court order appointing a trustee may be considered final and appealable, and therefore it had jurisdiction to consider the appeal.  The court finds it has jurisdiction to hear the present appeal.

*Ins. Co.*, 506 U.S. 866 (1992).   A bankruptcy court's order approving the appointment of a trustee is reviewed for abuse of discretion.  *See Comm. of Dalkon Shield Claimants v. A.H. Robins Co*, 828 F.2d 239, 242 (4th Cir. 1987); *In re Fraidin*, 43 F.3d 1466, 1994 WL 687306, at *1 (4th Cir. 1994)(unpublished)("[T]he question here is not whether the court would have appointed a trustee had it been deciding the question in the first instance, but whether the bankruptcy court abused its discretion in appointing a trustee.").

## III.  Analysis

Debtor presents the following issue on appeal: "Did the Bankruptcy Court err when it granted Ahan's motion for appointment of a Trustee?"

The bankruptcy court may appoint a trustee in a Chapter 11 case pursuant to 28 U.S.C. § 1104(a)(1), which provides in part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
>> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . ; or
>>
>> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate without regard to the number of holders of securities of the debtor or

> the amount of assets or liabilities of
> the debtor.

The bankruptcy court found there was cause to appoint a trustee under this section.[9]   (Paper 1, ex. 12, at 4).   Her reasons included:

> [T]he debtor's wearing of multiple hats and holding of multiple and perhaps conflicting duties to the creditors or shareholders of different companies as well as to the creditors of this estate; the debtor's lack of business operations and the licenses necessary to conduct those businesses; the inattention, neglect or other inappropriate treatment of the replevin action in this case that may have led to the loss o[r] diminution in value of this estate's largest assets; and the loss of confidence in the debtor by the creditor in this case and the U.S. Trustee.

*Id.* at 20.   Debtor challenges certain factual findings that the bankruptcy court made in reaching its decision to grant Ahan's motion to appoint a trustee.

---

[9] Relying on *Collier on Bankruptcy*, Debtor asserts that there is a strong presumption against appointing a trustee, and that "[t]here is no indication from the Bankruptcy Court's ruling that this presumption was considered." (Paper 6, at 4-5).  The record shows that the Bankruptcy Court considered this point in handing down her ruling.  Judge Alquist read from *Collier on Bankruptcy*, stating: "Although there is generally a presumption that the debtor is entitled to remain in possession during a Chapter 11 case, there are cases in which it is inappropriate to permit the debtor and its management to continue in possession." (Paper 1, ex. 12, at 16)(quoting *Collier on Bankruptcy* 1104.02[1] (15th ed. rev. 2005)).

**A. The Transfer of the FACS Stock Due to Mismanagement**

The bankruptcy court stated that "the most compelling reason" for appointment of a trustee was Debtor's handling of the replevin action filed by Prospect Telecom.   The court stated:

> Mr. Modanlo took no steps to have New York Satellite defend this action in any way.   An order was entered in that case in November of 2005 directing Mr. Modanlo to turn the stock of New York Satellite over to Prospect Telecom within 48 hours.
>
> Furthermore, Mr. Modanlo testified that he had heard from different lawyers for Prospect Telecom starting in June of 2005 with respect to the alleged loan default by New York Satellite in connection with this loan from Prospect Telecom and Prospect Telecom's demand for the turnover of stock as a result. Although Mr. Modanlo testified that he refused to turn over the stock to Prospect Telecom's lawyers, it is notable that at least some of these demands occurred before the debtor's 341 meetings and that the debtor made no mention of this critical issue to anyone in this case.
>
> The relinquishment of this stock, ostensibly Mr. Modanlo's estate's largest asset, was alienated in a replevin action without defense apparently within the last two months. Maybe this asset is capable of being brought back into the estate; perhaps not. Perhaps there are fraudulent conveyance or avoidance actions available; perhaps not. Perhaps defenses to or attacks on the replevin order are available; perhaps not.   But it is clear from his testimony that Mr. Modanlo did nothing to defend or investigate a defense. He didn't do anything, he stated, because he didn't know what to say to the Court.
>
> He did not seek counsel for New York Satellite except to confer with his personal bankruptcy counsel, Mr. Aronson.   A Chapter 11 trustee needs to investigate.   Mr. Modanlo, by

his actions, has demonstrated that he has not
or cannot do this.  He committed a major asset
to leave the estate without investigation or
remedies or serious consultation with counsel,
and Mr. Modanlo told no one involved in this
case about the creditor demands or the
replevin action, including the U.S. Trustee.

In this Court's view, his actions with
respect to this suit and this asset constitute
mismanagement or incompetence.  His actions in
this regard were certainly not in the
furtherance of the interests of his creditors
and the estate.

(Paper 1, ex. 12, at 13-14).

Debtor makes several challenges to the bankruptcy court's
findings of mismanagement: (1) It was clear from the loan agreement
between NYS and Prospect Telecom that NYS was in default, and it
would have been improper for Debtor to interpose an answer for the
purpose of delay; (2) Debtor had no legal authority to contest the
replevin action pursuant to Delaware law or, as Ahan suggested, to
place NYS into bankruptcy; (3) there was no transfer of FACS stock,
only *possession* of the stock certificates was given to Prospect
Telecom; and (4) attorneys for Ahan were aware of the entire loan
agreement, and they knew about the condition and status of the
loan.[10]  (Paper 6, at 5-14).

_____

[10]  Debtor asserts in his reply memorandum that there is no
evidence of current mismanagement, and most of the allegations of
mismanagement pertain to the mid-1990s.  (Paper 17, at 2).  The
bankruptcy court, however, relied solely on evidence relating to
Debtor's management since he filed for Chapter 11 bankruptcy.
(Paper 1, ex. 12, at 9).  Debtor also asserts that his past acts do
not support the appointment of a trustee.  (Paper 17, at 13).  As
(continued...)

The bankruptcy court was not clearly erroneous in stating that Debtor's actions "constitute mismanagement or incompetence." Although Debtor claims he could not present a defense to the replevin action, he reached this conclusion without benefit of legal counsel, other than conferring with his personal bankruptcy counsel, Mr. Aronson.   There is no suggestion that Debtor ever considered the possibility of mounting a legal defense to the replevin action.   With respect to Debtor's argument that pursuant to Delaware statute he had no legal authority to contest the replevin action because he had filed for bankruptcy, Debtor did not raise this issue before the bankruptcy court, and the court will not consider this new argument that was raised for the first time on appeal.   *See Wheatley v. Wicomico County, Maryland*, 390 F.3d 328, 335 (4th Cir. 2004).

With respect to Debtor's argument that there was no transfer of FACS stock (only transfer of the stock certificate), this argument misconstrues the bankruptcy court's rationale.   Although the bankruptcy court expressed concern that Debtor relinquished the stock, the bankruptcy court's primary concerns were with Debtor's lack of legal defense to the replevin action and his failure to

---

[10](...continued)
noted previously, the bankruptcy court's decision was based on current management, therefore Debtor's past acts are irrelevant to this appeal.

inform other parties to the bankruptcy action about Prospect
Telecom's actions on the loan default.[11]

Finally, the evidence does not support Debtor's assertion that
attorneys for Ahan were fully aware fully of the loan agreement,
including the loan's status.  Although there is evidence that
Ahan's attorneys knew *some* of the information regarding the
Prospect Telecom loan, they did not know *all* of the information,
and they knew nothing about Prospect Telecom's replevin action
relating to NYS's most significant asset.  According to Debtor's
testimony during the hearing, most of Prospect Telecom's actions
with respect to the loan default took place in August, September,
and October 2005, when attorneys representing Prospect Telecom
notified Debtor that it wished to take possession of the FACS
certificates.  (Paper 1, ex. 11, at 40-42, 64-65).  To the extent
that Debtor argues that he disclosed information relating to the
Prospect Telecom loan "prior to the bankruptcy filing," any
disclosure would not include Prospect Telecom's more recent actions
(e.g., telephone calls made in August, September, and October 2005
and the replevin action) which had not occurred yet.  Although

---

[11] In her order denying the stay pending appeal, Judge Alquist
stated: "Whether by virtue of his action (or inaction) in the
replevin suit, the Debtor merely allowed Prospect Telecom to
perfect a lien in the stock, or whether he permitted the transfer
of ownership, does not change the outcome or the Court's view.  The
Debtor stood by, to the potential detriment of creditors and other
parties in his bankruptcy case, while a significant asset was
encumbered or transferred." (Paper 11, ex. A, at 7).

Debtor testified several times that he had relayed information about Prospect Telecom's actions to Ahan's attorneys, it is unclear from the transcript of the testimony what exactly he claims to have told Ahan's attorneys.  Notwithstanding this ambiguity, there is no evidence in the record that Debtor notified parties involved in the bankruptcy proceeding about Prospect Telecom's filing of the replevin action, or that the end result was the transfer of possession of the FACS stock certificates.

The record amply supports the bankruptcy court's findings that Debtor's actions with respect to the replevin lawsuit and the FACS stock "constitute mismanagement or incompetence," and therefore the finding of the bankruptcy court was not clearly erroneous.

**B. Conflicts of Interest**

Debtor begins his next argument by stating that the bankruptcy court could not fashion effective relief, thus "it should have withheld from rendering this judgment." (Paper 6, at 15).  Debtor contends that appointing a trustee was ineffective because (1) Christopher Mead, the trustee appointed for Debtor's case, is equally conflicted as Debtor, and therefore appointing a trustee is harmful to FACS, NYS, Debtor, and his creditors; and (2) the appointment of a trustee endangered NYS's contracts with Polyot.

Debtor did not raise most of these arguments before the bankruptcy court.  To the extent that Debtor objects to certain actions Mr. Mead has taken since his appointment, these objections

are not properly before this court.   The trustee's actions were never at issue in the bankruptcy court's decision – nor could they be – because a trustee had not been appointed yet, much less taken action.   Moreover, Debtor's argument that a trustee would be equally conflicted as Debtor because he or she would serve multiple masters also was not raised before the bankruptcy court, and the court will not consider new arguments raised for the first time on appeal.  *See Wheatley*, 390 F.3d at 335.   Debtor also argues that a trustee is not necessary due to acrimony between the parties, (paper 6, at 19), however, the bankruptcy court never cited a concern about acrimony between the parties as a factor in the decision to appoint a trustee.

Debtor further argues that the appointment of a trustee endangers FACS's Polyot contracts as well as licenses issued by the Federal Communications and permissions issued by the Department of Defense, and therefore the appointment should be overturned. Debtor presented no evidence to the bankruptcy court to support this argument, nor has he designated any evidence in his appeal in support.   The bankruptcy court did not give specific factual findings with respect to this issue, and therefore there could be no clear error.   Moreover, the bankruptcy court apparently gave this argument little if any weight, and instead relied on other factors, such as Debtor's actions in the replevin actions.  Because there is ample evidence regarding Debtor's actions with respect to

the replevin action and, as will be discussed in the next section, his dealings with creditors and his valuation of NYS, Debtor's argument is without merit.

**C. Lack of Candor and Valuation of NYS**

Debtor objects to the bankruptcy court's characterization that he was "less than forthcoming" at the creditors' meetings and that the schedules filed with the court "show at minimum a lack of candor" because Debtor valued his interest in NYS as zero. (Paper 1, ex. 12, at 10). With respect to the creditors' meetings, Debtor contends that he was forthcoming during the meetings and that he declined to answer only a few questions due to confidentiality agreements; Ahan already knew the information sought; and the opportunity to question Debtor further was never pursued by the United States Trustee or by Ahan. (Paper 6, at 22-24). With respect to the schedules, Debtor asserts that his valuation of NYS was his "guesstimate," that Debtor had no way of predicting whether the General Dynamics litigation would result in a positive verdict, and there was no way Debtor could know whether NYS would benefit from a positive verdict.

Debtor asserts that confidentiality agreements prevented him from disclosing certain information at the creditors meetings. During the first meeting, Debtor was asked about NYS's loans, and he responded that he did not know whether he could answer the questions due to the confidentiality agreement. Lynn Kohen, the

15

U.S. Trustee, asked Debtor to look at the confidentiality agreements so he would know whether he could answer the questions at the next meeting, and Debtor's counsel specifically stated that he would determine whether or not the confidentiality agreement allowed Debtor to disclose the loan terms. At the second meeting, Debtor was asked again about NYS's loans, and Debtor's counsel again invoked the confidentiality agreement. When Ms. Kohen asked whether Debtor's counsel had looked at the agreement, counsel answered that he had not, "[s]o I don't know any more now than I knew then." (Paper 1, ex. 26, at 63).[12]  This evidence supports the bankruptcy court's findings that Debtor was "less than forthcoming" at the creditors' meetings. Moreover, as discussed previously, the evidence does not support Debtor's assertion that Ahan "knew everything ... including everything about the Loan Agreement and its status." (Paper 6, at 23).  Finally, Debtor's argument that that the U.S. Trustee failed to call a third meeting is simply an attempt to shift the responsibility of disclosure away from Debtor, who had already refused to disclose certain information on two previous occasions.

Debtor's explanation for why he estimated the value of NYS at zero is equally unpersuasive.  Debtor argues that neither he

---

[12] The court has reviewed the compact disc recording of the hearing entered into evidence (paper 1, ex. 27), as well as the unofficial transcript which was referred to during the bankruptcy court's hearing (paper 1, ex. 26). For purposes of citation, the court will utilize the unofficial transcript.

individually nor NYS was a party to the General Dynamics litigation, and the case went to trial after the bankruptcy case commenced.  He asserts that he did not have a "crystal ball" to help him ascertain the potential verdict.  He also argues that, even if the General Dynamics litigation was successful, there was no guarantee that NYS, which holds common non-preferred stock in FACS, would benefit from a successful outcome.  "In the General Dynamics case, on July 22, 2005 [the date Debtor filed for bankruptcy], no one, including Mr. Modanlo, FACS, and General Dynamics could predict as to what was going to be the verdict or as to what is going to happen to the verdict."[13]  (Paper 6, at 27).

11 U.S.C. § 521(1) provides that "[t]he debtor shall file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs."  The Code imposes upon a debtor "an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*."  *Browning Mfg. v. Mims* (*In re Coastal Plains, Inc.*), 179 F.3d 197, 207-08 (5th Cir. 1999).

---

[13] Debtor has filed a supplement to his reply brief in which he notes that the General Dynamics verdict has been reduced. (Paper 21).  He argues that, because the General Dynamics verdict was reduced, neither the trustee nor Debtor's creditors can reasonably expect to see any distribution from FACS at the present time.  As discussed below, Debtor is required to disclose all assets, including contingent claims, and the eventual outcome of the General Dynamics litigation is of little significance in assessing the appointment of the trustee.

>The duty of disclosure in a bankruptcy
>proceeding is a continuing one, and a debtor
>is required to disclose all potential causes
>of action". *Youngblood Group v. Lufkin Fed.
>Sav. & Loan Ass'n*, 932 F.Supp. 859, 867
>(E.D.Tex. 1996). "'The debtor need not know
>all the facts or even the legal basis for the
>cause of action; rather, if the debtor has
>enough information . . . prior to confirmation
>to suggest that it may have a possible cause
>of action, then that is a "known" cause of
>action such that it must be disclosed'". *Id.*
>(brackets omitted; quoting *Union Carbide Corp.
>v. Viskase Corp.* (*In re Envirodyne Indus.,
>Inc.*), 183 B.R. 812, 821 n. 17 (Bankr.N.D.Ill.
>1995)). "Any claim with potential must be
>disclosed, even if it is 'contingent,
>dependent or conditional'". *Id.* (*quoting
>Westland Oil Dev. Corp. v. MCorp Management
>Solutions*, Inc., 157 B.R. 100, 103 (S.D.Tex.
>1993))(emphasis added).

*In re Coastal Plains*, 179 F.3d. at 208.

When Debtor filed for Chapter 11 bankruptcy, Debtor was the

sole owner of NYS.   One of NYS's assets was a majority of the

voting stock in FACS.   FACS, in turn, was getting ready for trial

against General Dynamics.   The fact that Debtor could not say with

certainty the result of the litigation does not relieve Debtor of

his duty of disclosure.  *See In re Coastal Plains*, 179 F.3d. at 210

(stating that the debtor should have disclosed information  about

a claim of up to $10 million against a supplier); *Hamilton v. State

Farm Fire & Casualty Co.*, 270 F.3d 778, 784 (9th Cir. 2001)(stating

that the debtor should have amended his disclosure statements and

schedules to provide notice regarding a claim against State Farm);

*Youngblood Group v. Lufkin Federal Sav. & Loan Ass'n*, 932 F.Supp.

859, 868 (E.D. Tex. 1996)("Plaintiff was all the while aware of each fact underlying the tying claim which would be later asserted. Yet plaintiff failed to disclose the possibility of litigation, despite the statutory and common-law mandates for such disclosure.").

Debtor relies on *In re Walker*, 198 B.R. 476, 479 (Bankr.E.D.Va. 1996), to assert that "[a] debtor cannot be expected to unerringly predict the future . . . ."  At issue was whether the bankruptcy court should reopen the debtor's case to hear a lender liability claim filed by several state court plaintiffs, including the debtor. *Id*. at 478.  Counsel for the state court plaintiffs already had taken steps to dismiss with prejudice the debtor from the state suit.  In a footnote, the court noted that the debtor lacked standing to pursue the state court litigation *because he did not disclose* to the bankruptcy court any potential causes of action against the state court defendants.  *Id*. at 478 n.3.  The court denied the motion to reopen the case.  The observation relied on by Debtor here arose in a different set of circumstances and does not excuse Debtor's failure to make candid disclosures.

Debtor valued his interest in NYS as zero, even though he knew of the pending General Dynamics litigation and he was confident about the case.  (Paper 1, ex. 10, at 74).  Debtor acknowledged that the valuation was a "guestimate" and that he did not obtain a

19

formal appraisal.  *Id.* at 64-65.  Based on the evidence, the bankruptcy court was not clearly erroneous in finding that the schedules Debtor filed with the court showed "at minimum a lack of candor."

Finally, with respect to all of Debtor's objections to the bankruptcy court's findings of fact, it is worth noting that there was no single factor underlying the bankruptcy court's decision to appoint a trustee.  In reaching her decision, the bankruptcy court cited:

> [T]he debtor's wearing of multiple hats and holding of multiple and perhaps conflicting duties to the creditors or shareholders of difference companies as well as to the creditors of this estate; the debtor's lack of business operations and the licenses necessary to conduct those businesses; the inattention, neglect or other inappropriate treatment of the replevin action in this case that may have led to the loss o[r] diminution in value of this estate's largest assets; and the loss of confidence in the debtor by the creditor in this case and the U.S. Trustee.

(Paper 1, ex. 12, at 20).  Debtor attempts to question many of the individual factual findings, but he is unable to demonstrate that the bankruptcy court erred when she found that these factors "taken together" constitute cause for the appointment of a trustee under § 1104(a).  The bankruptcy court did not abuse its discretion when it appointed a trustee in Debtor's Chapter 11 case.

**IV.  Conclusion**

For the reasons stated above, the court will affirm the ruling of the bankruptcy court.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge